Judge Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS ENRIQUE PALOMERA,<br><br>Defendant. | NO. CR14-5394RJB<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Michael Dion and Amy Jaquette, Assistant United States Attorneys, Defendant JESUS ENRIQUE PALOMERA, and his attorneys, Jeffrey Steinborn and Stephan Illa, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A).

    1.    **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the following charges contained in the Superseding Indictment ("Indictment"): Counts 2 and 3, Conspiracy to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); and Count 4, Alien in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(5)(A).

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements Of The Offenses.** The elements of the offense of Conspiracy to distribute methamphetamine, as charged in Counts 2 and 3, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), are as follows:

    a.    First, that there was an agreement between two or more persons to distribute methamphetamine; and

    b.    Second, the Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The elements of the offense of offense of Alien in Possession of a Firearm, as charged in Count 4, in violation of Title 18, United States Code, Section 922(g)(5)(A), are:

    a.    First, the defendant knowingly possessed a firearm;

    b.    Second, the firearm had been transported from one state to another, or from a foreign nation to the United States; and

    c.    Third, at the time the defendant possessed the firearm, the defendant was an alien illegally or unlawfully in the United States.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense of Conspiracy to distribute methamphetamine, as charged in Counts 2 and 3, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), are as follows: A maximum term of imprisonment of up to life, and a mandatory minimum term of imprisonment of ten (10) years, a fine of up to $10,000,000, a period of supervision following release from prison of five years, and a mandatory special assessment of $100 dollars. Defendant agrees that the special assessment shall

be paid at or before the time of sentencing.

The statutory penalties applicable to Count 4, the offense of offense of Alien in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(5)(A), are as follows: imprisonment for up to ten (10) years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that a consequence of pleading guilty may include the forfeiture of certain property either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4.  **Drug Offense - Proof of Drug Quantity for Mandatory Minimum.** Defendant further understands that in order to invoke the statutory sentence for the drug offenses charged in Count 2 and 3, the United States must prove that Defendant's

conduct as a member of the narcotics conspiracies charged in Count 2 and 3, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count 2 and 3, involved more than 50 grams of actual methamphetamine with respect to each offense. Defendant expressly waives the right to require the United States to make this proof at trial and stipulates as a part of this plea of guilty that Defendant's conduct as a member of the narcotics conspiracies charged in Counts 2 and 3, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Counts 2 and 3, involved more than 50 grams of actual methamphetamine with respect to each count.

5. **Drug Offenses -- Program Eligibility.** Defendant understands that by pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

6. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

  a. The right to plead not guilty and to persist in a plea of not guilty;

  b. The right to a speedy and public trial before a jury of his peers;

  c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

  d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

  e. The right to confront and cross-examine witnesses against Defendant at trial;

  f. The right to compel or subpoena witnesses to appear on his behalf at trial;

PLEA AGREEMENT/PALOMERA - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      g.     The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

      h.     The right to appeal a finding of guilt or any pretrial rulings.

7. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offense or offenses:

      a.     In 2010 and 2011, JESUS ENRIQUE PALOMERA conspired with others to distribute methamphetamine in and around the Tacoma, Washington, area (the "Count 2 conspiracy"). PALOMERA knew that the purpose of the conspiracy was to distribute methamphetamine and intended to help accomplish that purpose. The other conspirators – who implicitly or explicitly agreed with PALOMERA to distribute methamphetamine on PALOMERA's behalf – included Alicia Robertson and Jorge Hernandez-Godinez. This network distributed kilograms of actual methamphetamine.

      b.     In 2011, PALOMERA also sold, and arranged for the sale of, multiple firearms. On November 16, 2011, PALOMERA personally sold a PWA, 5.56 caliber, model Commando, assault rifle, to an undercover law enforcement officer. The sale took place in Pierce County, Washington. The rifle had been made outside of the state of Washington. PALOMERA knowingly physically possessed the rifle before selling it. At all relevant times, PALOMERA was an alien illegally in the United States, as he was a Mexican citizen who had never been authorized to enter the United States. On the same day, PALOMERA helped to arrange and broker the sale of eight other firearms to the undercover officer.

      c.     Subsequently, law enforcement officers arrested various conspirators in the network. PALOMERA was not arrested, but rather left for Mexico.

PLEA AGREEMENT/PALOMERA - 5

d.      PALOMERA continued to run the United States drug operation from Mexico. In many instances, PALOMERA would arrange methamphetamine deals via Facebook with customers in the Pierce County area. The customers would wire payment to a bank account in Mexico at PALOMERA's instructions. PALOMERA would then arrange for a member of the conspiracy to deliver the drugs to the customer in Pierce County. Several individuals conspired to distribute methamphetamine for PALOMERA, including but not limited to Lucas Manglona, Tisha Janzen, James Roberts, Daniel Vasquez, and others (the "Count Three Conspiracy). PALOMERA knew that the purpose of the conspiracy was to distribute methamphetamine and intended to help accomplish that purpose. In this manner, PALOMERA executed numerous methamphetamine deals and distributed kilograms of actual methamphetamine over a period of time up to and including 2014 and 2015.

e.      The total amount of actual methamphetamine distributed via both of the conspiracies that PALOMERA supervised was no less than fifty kilograms. PALOMERA arranged for these drugs to be transported from Mexico, through California and Oregon, and to the state of Washington.

f.      Defendant understands and acknowledges that the United States may present additional evidence at sentencing, including evidence in the form of text and electronic messaging.

9.      **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just

punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

   a. The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

   b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

   c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

   d. Defendant may not withdraw his guilty plea solely because of the sentence imposed by the Court.

10. **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Immigration Consequences.**  Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States.  Under federal law, a broad range of crimes are grounds for removal, including one or more of the offenses to which Defendant is pleading guilty, and some offenses make removal from the United States presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his mandatory removal from the United States.

12. **Credit For Time Served In Mexico.**  The parties acknowledge that Defendant was in custody in Mexico pending extradition to face charges in this case, from June 4, 2015, through July 7, 2016.  Defendant acknowledges that no promises have been made with respect to any credit for that time.

13. **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and also agrees to dismiss any remaining charges in the Indictment.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

14. **Forfeiture of Assets.** Defendant understands that criminal forfeiture is part of the sentence imposed in this case. Pursuant to Title 21, United States Code, Section 853, Defendant agrees to forfeit to the United States immediately all of his right, title, and interest in any and all property, real or personal, that was used to commit or to facilitate the commission of the conspiracy to distribute methamphetamine (as set forth in Counts 2 & 3) and any property constituting, or derived from, any proceeds he obtained, directly or indirectly, as a result of these offenses.

Defendant also agrees to forfeit to the United States immediately all of his right, title, and interest in any and all firearms and/or ammunition involved or used in his illegal possession of a firearm (as set forth in Count 4). These firearms and/or ammunition are subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), and include but are not limited to: a PWA, 5.56 caliber, model Commando, assault rifle, serial no. 13733. Defendant consents to the United States disposing of this firearm as permitted by governing law, including but not limited to its destruction and/or official use.

15. **Forfeiture of Contraband.** If law enforcement seized any contraband that was in Defendant's direct or indirect control, Defendant also consents to the administrative and/or civil judicial forfeiture, official use, and/or destruction of that contraband by any law enforcement agency involved in its seizure.

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States

has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

    a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine,

restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

   b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Defendant also waives any challenges based upon, or related to, his extradition from Mexico to the United States.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

  18. **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

  19. **Statute of Limitations**.  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

  20. **Completeness of Agreement**.  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties.

1  This Agreement binds only the United States Attorney's Office for the Western District
2  of Washington. It does not bind any other United States Attorney's Office or any other
3  office or agency of the United States, or any state or local prosecutor.

4  Dated this 9th day of November, 2017.

JESUS ENRIQUE PALOMERA
Defendant

JEFFREY STEINBORN
Attorney for Defendant

MICHAEL DION
Assistant United States Attorney

PLEA AGREEMENT/PALOMERA - 12